No. 3440.

(Court of Appeal, Parish of Orleans)

HENRY GRIFFIN vs MAGINNIS COTTON MILLS.

Questions of fact are involved in this case.

Appeal from Civil District Court, Division C.

Pierre Crabites, Plaintiff and Appellee.

Hewes T. Gurley, Defendant and Appellant.

BEAUREGARD, J. This case which on trial before the Court a qua and a jury had resulted in a verdict and judgment of $750.00 with legal interest from judicial demand in favor of appellee, was on appeal to this Court remanded that the exclusion by the lower Court of certain evidence based on experiments had (ex parte) as to the possibility of the personal injuries suffered by plaintiff, be admitted and considered by the Court for what it was worth.

The subsequent admission by the Court of all evidence going to substantiate, from experiments had, Appellants defence, did not lead the Court, which on the second trial which was had on the issue of these experiments, to reach a different conclusion. The second trial was before the judge a qua alone on the consent thereto of Counsel in the case.

At this second trial, in which all of the evidence adduced at the first trial was again offered, additional evidence was offered of these several experiments. For it must be noted that three experiments were had:

1st. One before the original trial of the case.

2nd. One after the verdict of the jury and prior to the refusal of a new trial.

3rd. One after this case was remanded, when evidence of all these experiments was fully admitted.

Acting under the latitude accorded Defendants in remanding this case and whilst it was before the Court on trial, request was made that experts should be appointed by the Court to verify all such evidence as was given and heard (at the second trial of the cause) to show the impossibility of plaintiff's assertion that, at the corner of Poeyfarre and Constance streets, he had been scalded by steam and hot water or steam from the discharged Boilers of the Defendants Mill on January 24th, 1903 at between 9½ and 10 P. M. because never at any time, did the water from the discharge of these boilers overflow the banquette at that corner, because considering

254

the distance from the boilers to the corner of Poeyfarre and Constance streets where the accident happened, and to which corner the boiler discharged water had to flow, through a gutter along Poeyfarre street either the water was at that point harmless in its temperture or by its steam, or, if there was any danger at that corner, it could have been detected owing to the several electric lights which could have shown to any careful pedestrian the danger on his way at that corner, and that therefore an expert test of the locus in quo was a necessity, that the Court a qua be fully apprized of the true facts of the case.

The case was therefore continued and experts being appointed, the test was made.

Reverting, before coming to the report and examination made of these investigations of the locus in quo, to the testimony of Mr. Maginnis, the President, and his employees, it is impossible to state with any positiveness that when these various experiments were had (including the test allowed by trial Court) that, identically the very same conditions (physical) existed at the time when the plaintiff was injured.

It is true that he does himself and his employees so testify; but, it must be borne in mind that, at one period of their testimony, their counsel was compelled to admit that their remembrance of details threw them in a helpless condition.

It must also be noted that long after the accident the City authorities if it may be so stated took a hand in the matter of the condition of the gutters at the corner of Poeyfarre and Constance streets and changed the dams there existing. So that when the third and last experiment was made, not only was the crossing from Poeyfarre and Constance streets, altered but the dams likewise; and re-altered by Defendant in order, Defendant's contend, to restore the locality in exactly the *identical condition* in which it was, when the accident is alleged to have happened.

Was that condition identical? It is time that plaintiff's counsel were summoned to be present at the third experiment; but this they refused and aptly say that, they did not wish to appear to be bound by evidence likely to be against them; not knowing, and this is inferred, whether the very same identical conditions on the night of the test would prevail as when the plaintiff met with his accident. The prominent features of this case are the following:

1. That the credibility of the plaintiff in his own cause was never shaken or overcome.

2, That he was scalded, is testified to by the Physician who attended him for weeks.

3. That he was a good sober laborer and of good reputation is not assailed.

4. That the very same physical conditions existed during the several tests or experiments which were had, prior to, before an ap-

plication for a new trial was made, and after the remanding of this case, is a matter of utmost doubt.

On the other hand a disinterested jury which visited the locus gave credence to the plaintiff's testimony.

The Judge a qua, who alone tried the case, after hearing the evidence adduced at the second trial and after listening to the testimony of the experts appointed by him, reached the same conclusion. All of these are conditions not lightly to be set aside, to adopt theoretical possibilities or impossibilities, resting on experiments had long after the facts on which these theories rest might have met with such physical changes and alterations as not to warrant with safety a reversal of a decree founded on and justified by the finding of a jury and the appreciation given by the trial Judge, not only to the credibility of the plaintiff, but to the conscious weakness of the Defendants conflicting evidence, which compelled their counsel to admit at one time that these witnesses knew not " whereof they spoke."

As to the credibility of a witness the Court lays down as a guiding principle the following:

43 A. 91 Breaux D. 378.

Where the character and credibility of witnesses are not impeached. their testimony cannot be overcome by suspicion founded on mere improbability of their statements, when not shown to be in any sense impossible; especially where the Judge a qua who heard the testimony has given credit to it."

The experts, or Court officers appointed by the Court to carry on or witness the third experiment alluded to above, and who were to that effect examined at the trial of the case, did not, by their testimony, sway the conviction of the Court.

It must be remembered that plaintiff alleged and testified that "when near Poeyfarre street, and Constance street" a burst of scalding hot water and steam came from the Maginnis Mill and in impinging upon plaintiff, scalded his right leg severly and terribly scalded, burnt his left leg from ankle to knee destroying the flesh &c" all of which was denied by the Defendant Mill &c.

Now when the expert or disinterested witness, Mr. Andre, testified as to his report in the case, he was asked the following:

"Did you see any thing in that experiment to indicate to you that there was any possibility of the water, or from either one or all of these boilers spurting out above the banquette in such a way as to burn a pedestrian in passing?

His answer was: "I cannot answer that. All I can say about that is this, that it did not do it that night."

Proof patent that this witness did not consider it an impossibility for this hot water and steam to spurt out on some other night.

At any rate there is no absolute certainty in Defendants defense; whereas in the affirmative evidence of plaintiff, underlined it may be

256

said, by the verdict of a jury, and the conviction of the trial judge, it would be judicially unsatisfactory to give credit to experiments tinged with doubt and thereupon to reverse the Judgment appealed from.

This judgment is however excessive and is herein amended by reducing it to $250.00 two hundred and fifty dollars in appellee's favor.

And as thus amended it is affirmed. Costs of Appeal to be paid by the Appellee.

### DISSENTING OPINION.

The uncorroborated testimony of a plaintiff in a suit for damages resulting from an accident must yield to the physical facts disclosed by an experiment made, by order of Court, after notice to adverse counsel and in the presence of experts duly appointed, under conditions substantially similar to those which prevailed at the time of the accident.

DUFOUR, J. The testimony satisfies me. that the experiment made under order of the District Court was under conditions substantially similar to those prevailing on the night of the accident. Plaintiff's counsel, though notified, did not attend but two officers of the Court, appointed as experts were present. Though not merely one but all of the boilers were discharged, there was no shooting up of the water.

This physical fact destroys the uncorroborated testimony of the party in interest, though he may have been honest in his statement, he is evidently mistaken.

If he was injured. it was not due to the spurting up of the boiling water, but to his stepping into the gutter at the place where a plank was missing.

The last theory however, is not the basis of this action, and on the other theory the evidence is against plaintiff.

I therefore dissent.

May 16, 1904.

Rehearing refused, June 23, 1904.